**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, *et al.*,<br><br>   Plaintiffs,<br><br>   v.<br><br>RYAN ZINKE, *et al.*,<br><br>   Defendants,<br><br>   and<br><br>CONOCOPHILLIPS ALASKA, INC.,<br><br>   Intervenor-Defendant. | Case No. 3:18-cv-00031-SLG |

## ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 25 is Plaintiffs Natural Resources Defense Council, Center for Biological Diversity, Greenpeace, Inc., and Friends of the Earth's ("Plaintiffs") motion for summary judgment. Intervenor-Defendant ConocoPhillips Alaska, Inc. ("CPAI") opposed and cross-moved for summary judgment at Docket 28. Defendants Ryan Zinke, Karen Mouritsen, and the Bureau of Land Management ("BLM") (collectively, "Federal Defendants") opposed and cross-moved for summary judgment at Docket 29. Plaintiffs replied at Docket 30. Oral argument was held on September 21, 2018, at Anchorage, Alaska.

## BACKGROUND

This case addresses the 2016 and 2017 lease sales for parcels in the National Petroleum Reserve-Alaska ("NPR-A").[1] The NPR-A is comprised of approximately 23 million acres.[2] It is governed by the Naval Petroleum Reserves Production Act of 1976 ("NPRPA"),[3] which requires the Secretary of the Interior to "conduct an expeditious program of competitive leasing of oil and gas in the Reserve . . . ."[4]

In November 2012, BLM issued a Final Integrated Activity Plan/Environmental Impact Statement ("IAP/EIS"), which described five alternatives for oil and gas leasing in the NPR-A.[5] In February 2013, the Secretary of the Interior issued a Record of Decision ("ROD"), which adopted one of the five alternatives and made "approximately 11.8 million acres available for oil and gas leasing."[6] Plaintiffs did not seek judicial review of the IAP/EIS or ROD.[7]

---

[1] A related case, *N. Alaska Envtl. Ctr., et al. v. US Dep't of the Interior, et al.*, 3:18-cv-00030-SLG, was filed the same day.

[2] *See* Administrative Record ("AR") 0015 (IAP/EIS).

[3] 42 U.S.C. §§ 6501–08.

[4] 42 U.S.C. § 6506a(a).

[5] *See* AR 0002–09 (IAP/EIS).

[6] AR 3417 (ROD); *see also* AR 3420–28 (ROD section describing the Secretary's decision).

[7] *See* Docket 30 (Plaintiffs' Reply Brief) at 23 ("It is true that Plaintiffs could have challenged the prior, separate decision to issue the Plan EIS, but there is no authority for the proposition that their decision not to do so somehow bars them from challenging new agency decisions down the road.").

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 2 of 10

On March 31, 2016, BLM issued a call for nominations and comments for the 2016 lease sale.[8] On December 14, 2016, BLM held the 2016 lease sale.[9] BLM offered 145 tracts comprising more than 1.4 million acres, of which 67 tracts, comprising more than 613,000 acres, received bids.[10] BLM ultimately issued 66 leases.[11] On August 7, 2017, BLM issued a call for nominations and comments for the 2017 lease sale.[12] On December 6, 2017, BLM held the 2017 lease sale.[13] BLM offered 900 tracts comprising approximately 10.3 million acres, of which seven tracts, comprising nearly 80,000 acres, received bids.[14] BLM issued leases for the seven tracts on February 23, 2018.[15]

On February 2, 2018, prior to the issuance of the leases from the 2017 lease sale, Plaintiffs filed their Complaint in this action. Plaintiffs plead two causes of action: The First Cause of Action alleges that BLM violated the National Environmental Protection Act ("NEPA"), its implementing regulations, and the APA[16] by "fail[ing] to take a hard look at the potential greenhouse gas emissions that would result from the 2016 and 2017 lease

---

[8] *See* AR 2737 (Call for Nominations and Comments for 2016 Lease Sale).

[9] *See* AR 3033 (2016 Bid Recap).

[10] *See* AR 3033 (2016 Bid Recap).

[11] *See* AR 3081–83 (2016 Lease Decision and Cover Page for 65 Leases Issued to CPA; AR 3084–86 (66th Lease, Issued to Armstrong Energy, LLC). Federal Defendants maintain that "one bid was abandoned." Docket 29 at 26.

[12] *See* AR 3579 (Call for Nominations and Comments for 2017 Lease Sale).

[13] *See* AR 9711 (2017 Lease Sale Results Summary).

[14] *See* AR 9711.

[15] *See* AR 9767–68 (2017 Lease Decision).

[16] *See* Docket 1 at 17–18, ¶¶ 53–58; 42 U.S.C. § 4332(2)(C)(ii); 40 C.F.R. §§ 1508.7, 1508.8, 1508.25; 5 U.S.C. §§ 702, 706.

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 3 of 10

sales and the environmental effects of those emissions."[17] The Second Cause of Action alleges that BLM violated NEPA, an implementing regulation, and the APA[18] by failing to "develop[] a range of lease sale configurations and comparing the environmental impacts of these various lease sale alternatives, despite the availability of information necessary to conduct the required analysis."[19]

## LEGAL STANDARD

The Court reviews "BLM's compliance with NEPA under the [APA's] deferential 'arbitrary and capricious' standard[.]"[20] "[W]hen an agency complies in good faith with the requirements of NEPA and issues an EIS indicating that the agency has taken a hard look at the pertinent environmental questions, its decision should be afforded great deference."[21]

"Any action seeking judicial review of the adequacy of any program or site-specific environmental impact statement under section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. [§] 4332) concerning oil and gas leasing in the National Petroleum Reserve--Alaska shall be barred unless brought in the appropriate District Court within 60

---

[17] Docket 1 at 18, ¶ 58.

[18] *See* Docket 1 at 19, ¶¶ 59–63; 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.14(a); 5 U.S.C. §§ 702, 706.

[19] Docket 1 at 19, ¶ 63.

[20] *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 641 (9th Cir. 2010) (citing 5 U.S.C. § 706(2)(A)).

[21] *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 977 (9th Cir. 2006) (citing *North Slope Borough v. Andrus*, 642 F.2d 589, 599 (D.C. Cir. 1980)).

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 4 of 10

days after notice of the availability of such statement is published in the Federal Register."[22]

## DISCUSSION

I. Mineral Leasing Act's Applicability

CPAI asserts that "NRDC is barred from challenging the 2016 Lease Sale and associated leases because the Mineral Leasing Act's ("MLA") 90-day statute of limitations for challenging leasing decisions has expired."[23] Plaintiffs respond that the MLA's statute of limitations does not apply because "[t]he NPRPA withdraws all lands within the Reserve from application of the MLA."[24] The text of the NPRPA suggests that Congress intended to withdraw the NPR-A from the application of the MLA:

> Subject to valid existing rights, all lands within the exterior boundaries of such reserve are hereby reserved and withdrawn from all forms of entry and disposition under the public land laws, *including the mining and mineral leasing laws*, and all other Acts . . . . All other provisions of law heretofore enacted and actions heretofore taken reserving such lands as a Naval Petroleum Reserve shall remain in full force and effect to the extent not inconsistent with this Act.[25]

A House report is more explicit: "It is the specific intent of this provision that all lands be explicitly excluded from the provisions of the Mineral Leasing Act of 1920."[26] The Department of the Interior's solicitor issued an opinion reinforcing this interpretation.[27]

---

[22] 42 U.S.C. § 6506a(n)(1).

[23] Docket 28 at 27; *see also* 30 U.S.C. § 226-2.

[24] Docket 30 at 23.

[25] 42 U.S.C. § 6502 (emphasis added).

[26] H.R. Rep. No. 94-942 (1976), at 20.

[27] *See* Office of the Solicitor, U.S. Dep't of the Interior, GFS(O&G) SO-1, *Authorization for Oil and Gas Leasing on the Nat. Petroleum Reserve-Alaska*, 1981 WL 29263, at *8 (Oct. 15, 1981)

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 5 of 10

CPAI argues that "Congress amended the MLA to expressly specify which MLA provisions are *not applicable* to the Petroleum Reserve, and [the MLA's 90-day limitation statute] is *not* included in the list of inapplicable provisions."[28] Plaintiffs respond: "This assertion is . . . misleading, to say the least. The referenced amendment to the MLA occurred in 1935, more than 40 years before Congress passed the NPRPA. This MLA amendment is therefore not any indication of the extent to which Congress intended the NPRPA to limit the MLA's application to leasing in the Reserve."[29] CPAI also relies on an interpretation of BLM regulations. "Specifically, 43 C.F.R. § 3000.5 repeats the [MLA's] limitations period . . . . The preamble to the final rule implementing 43 C.F.R. § 3000.5 explains that this provision was expressly promulgated under the authority of the MLA *and* the 1980 amendments to the NPRPA."[30] Plaintiffs respond by citing to the Interior solicitor's opinion and maintain that "there is no indication BLM intended [43 C.F.R. § 3000.5] to apply in the Reserve. Instead, BLM has promulgated separate regulations governing leasing in the Reserve, *see* 43 C.F.R. §§ 3130–36, 3152, 3160, including a separate regulation setting the limitations period for challenging an EIS concerning oil and gas leasing, 43 C.F.R. § 3130.2."[31] Based on the foregoing, the Court finds that the MLA's statute of limitations does not apply to Plaintiffs' claims.

---

("The National Petroleum Reserve in Alaska was excluded from the operation of the Mineral Leasing Act by the withdrawals in section 102 of NPRPA.").

[28] Docket 28 at 30 (emphasis in original) (citing 30 U.S.C. § 236a).

[29] Docket 30 at 24 (citing 49 Stat. 679 (1935), codified at 30 U.S.C. § 236a; 90 Stat. 303 (1976), codified as amended at 42 U.S.C. § 6502).

[30] Docket 28 at 30 (emphasis in original) (citations omitted).

[31] Docket 30 at 25.

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 6 of 10

II. NPRPA's Time Limitation for Seeking Judicial Review of an IAP/EIS

Federal Defendants claim that Plaintiffs' assertions "(1) that BLM failed to adequately analyze climate change; and (2) that BLM failed to consider a reasonable range of alternatives at the lease sale stage" both "address the adequacy of the IAP/EIS" and, because these claims were not brought in 2013, they "are time-barred[.]"[32] Plaintiffs maintain that they "do not challenge the Plan EIS. Plaintiffs challenge BLM's separate decisions to do no additional NEPA analysis when it made leasing decisions in 2016 and 2017."[33]

Plaintiffs' assertion that they are not challenging the adequacy of the IAP/EIS is belied by their Complaint and briefing. As to BLM's alleged failure to sufficiently consider greenhouse gas emissions, the IAP/EIS discusses the impacts of greenhouse gases and fine atmospheric particles on the NPR-A's climate.[34] Plaintiffs' Complaint asserts that "BLM did not conduct any analysis of the potential impacts of the greenhouse gas emissions resulting from the production and use of oil and gas that could result from the lease sales. The Plan EIS did not analyze these impacts for the plan as a whole or for any future lease sales . . . ."[35] Plaintiffs' summary judgment briefing also highlights the alleged inadequacy of the IAP/EIS's treatment of the climate impacts of oil and gas leasing.[36]

---

[32] Docket 29 at 31. CPAI makes a similar argument. *See* Docket 38 at 36–41 (citing 42 U.S.C. § 6506a(n)(1)). *See also infra* n.40–42.

[33] Docket 30 at 22.

[34] *See* AR 155–58 (IAP/EIS).

[35] Docket 1 at 18, ¶ 56.

[36] *See* Docket 25 at 29 (arguing that the EIS did not "assess[] the climate impacts of the lease

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 7 of 10

As to consideration of alternatives, Plaintiffs maintain in their Complaint that "[t]he Plan EIS did not analyze or compare alternative lease sale configurations, size, or timing in the open areas."[37] Plaintiffs repeat these assertions in their briefing.[38] As CPAI

---

sales"); Docket 25 at 30 ("The Plan EIS . . . does not assess the effects of consuming the oil and gas produced from the program areas. The EIS considers only the greenhouse gas emissions of oil and gas operations within the Reserve, deeming them 'minuscule.'"). Plaintiffs attach the following from the IAP/EIS:

> Air quality impacts from Alternative A would contribute some greenhouse gas emissions, though a miniscule amount in the global context. The assessment of greenhouse gas emissions and climate change is in its formative phase. While it is not possible to know with confidence the impact of increased greenhouse gas emissions due to proposed operations within the planning area on global climate change, it is certain that it would contribute a very small amount to climate change.

Docket 25-10 (Exhibit 10) (IAP/EIS) at 136 (AR 631).

> As described previously, the estimated greenhouse gas emissions for the proposed action and for all the alternatives represent a minuscule fraction of the net greenhouse gas emissions for the State of Alaska. Although the cumulative effects of global greenhouse gas emissions are well-understood, our current scientific understanding of climate change does not allow us to relate specific sources of greenhouse gas emissions to any specific climate-related regional or global impacts. Further, since the specific effects of the proposed action, which may or may not contribute to climate change, cannot be determined, it is not possible to determine whether any particular action will lead to significant climate-related environmental effects.

> Potential impacts to air quality due to climate change are likely to be varied. For example, if global climate change results in a warmer and drier climate, increased particulate matter impacts would occur due to increased windblown dust from drier and less stable soils. Alternatively, reclamation efforts may be more successful with more favorable conditions for plant growth. Warmer temperatures are also likely to reduce emissions from combustion sources used for residential heating, and may enhance dispersion of air pollutants (USDOI BLM 2008).

Docket 25-10 (Exhibit 10) (IAP/EIS) at 179 (AR 1466).

[37] Docket 1 at 19, ¶ 61.

[38] "BLM stated in the Plan EIS that it would employ a phased approach to leasing, making only certain lands available at each lease sale, based on information available at the time of a lease sale. In keeping with the programmatic nature of the Plan EIS, the alternatives examined at that phase considered which areas should be permanently protected and which protections should

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 8 of 10

maintains, "the same issues presented by NRDC in this litigation were raised by NRDC in 2012 and responded to by BLM, and the 2012 IAP EIS was finalized *without* the analyses and additional alternatives demanded then and now by NRDC."[39] Because Plaintiffs challenge the adequacy of the IAP/EIS, their claims fall within the NPRPA's 60-day time frame for instituting a NEPA challenge to an EIS.[40] Plaintiffs were required to bring these claims by February 26, 2013;[41] they did not do so.[42] Based on the foregoing, the Court finds Plaintiffs' challenge to the IAP/EIS to be time-barred.

---

apply to areas open for leasing. The Plan EIS did not make decisions about which areas to lease in specific lease sales or weigh different leasing alternatives in the areas left open to leasing." Docket 25 at 33. "The Plan . . . EIS did not make decisions about future lease sales and thus did not explore all reasonable alternatives for possible future lease sales. . . . In the Plan EIS, BLM stated that 'the first sale, as well as any subsequent sale, might offer only a portion of the lands identified in the record of decision as available, making possible a phased approach to leasing and development.'" Docket 25 at 36 (citing Docket 25-10 (Exhibit 10) (IAP/EIS) at 14 (AR 23)). "BLM explained that before conducting each lease sale, it would make a new decision about whether, when, and where to lease: 'The timing of and the lands offered for lease in the second and subsequent sales, if any, would depend in part on the response to the first sale and the results of the exploration that follows.'" Docket 25 at 36 (emphasis omitted) (citing Docket 25-10 (Exhibit 10) (IAP/EIS) at 14 (AR 23)).

[39] Docket 28 at 39 (emphasis in original).

[40] *See* 42 U.S.C. § 6506a(n)(1) ("Any action seeking judicial review of the adequacy of any program or site-specific environmental impact statement under section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. [§] 4332) concerning oil and gas leasing in the National Petroleum Reserve–Alaska shall be barred unless brought in the appropriate District Court within 60 days after notice of the availability of such statement is published in the Federal Register.").

[41] The notice of availability for the IAP/EIS was published in the Federal Register on December 28, 2012. *See* 77 Fed. Reg. 76,515, (Dec. 28, 2012). February 26, 2013 marked 60 days from the publication date.

[42] *See* Docket 30 (Plaintiffs' Reply Brief) at 23 ("It is true that Plaintiffs could have challenged the prior, separate decision to issue the Plan EIS, but there is no authority for the proposition that their decision not to do so somehow bars them from challenging new agency decisions down the road.").

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 9 of 10

III. Challenges to the Lease Sales

To the extent that Plaintiffs challenge the lease sales themselves, rather than the IAP/EIS, they waived any argument that BLM should have supplemented the IAP/EIS by failing to raise that argument in their Complaint. The Court incorporates by reference its summary judgment order in *Northern Alaska Environmental Center, et al. v. U.S. Department of the Interior, et al.*, 3:18-cv-00030-SLG.[43]

**CONCLUSION**

In light of the foregoing, Plaintiffs' Motion for Summary Judgment at Docket 25 is DENIED; Intervenor-Defendant CPAI's Cross-Motion for Summary Judgment at Docket 28 is GRANTED; and Federal Defendants' Cross-Motion for Summary Judgment at Docket 29 is GRANTED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 6th day of December, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[43] Furthermore, to the extent that Plaintiffs' argument is that BLM is required to produce an EA or EIS, rather than supplement the existing IAP/EIS, to account for the impact of oil and gas leasing, exploration, and development on greenhouse gas emissions, the Court incorporates by reference its discussion in *N. Alaska Envtl. Ctr., et al. v. U.S. Dep't of the Interior, et al.*, 3:18-cv-00030-SLG, that at the leasing stage, supplementation is the appropriate lens through which to analyze new information that was not available at the time the IAP/EIS was issued.

Case No. 3:18-cv-00031-SLG, *NRDC, et al. v. Zinke, et al.*
Order re Cross-Motions for Summary Judgment
Page 10 of 10